J-S57011-19

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| IN RE: S.Y.F., A MINOR | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| APPEAL OF: X.F., MOTHER | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | No. 940 MDA 2019 |

Appeal from the Decree Entered May 21, 2019
In the Court of Common Pleas of Lancaster County Orphans' Court at
No(s):  2078-2018

BEFORE:  BOWES, J., STABILE, J., and MUSMANNO, J.

MEMORANDUM BY BOWES, J.:                    **FILED NOVEMBER 27, 2019**

X.F. ("Mother") appeals from the May 21, 2019, orphans' court decree[1] that involuntarily terminated her parental rights to her daughter, S.Y.F., born in February 2012.[2]  We affirm.

_____

[1] The decree was dated May 16, 2019; however, the orphans' court did not provide notice pursuant to Pa.R.C.P. 236(b) until May 21, 2019.  Our appellate rules designate the date of entry as "the day on which the clerk makes the notation in the docket that notice of entry of the order has been given as required by Pa.R.C.P. 236(b)."  Pa.R.A.P. 108(b).  Further, our Supreme Court has held that "an order is not appealable until it is entered on the docket with the required notation that appropriate notice has been given." ***Frazier v. City of Philadelphia***, 735 A.2d 113, 115 (Pa. 1999).

[2] By the same decree, the orphans' court involuntarily terminated the parental rights of the biological father, A.O. a/k/a A.O.-S. ("Father"), as well as the presumptive father, E.P., Jr. ("Presumptive Father").  Father did not participate in the orphans' court proceedings nor appeal the decree. Presumptive Father filed an appeal listed at Superior Court Docket No. 974 MDA 2019, which we addressed in a separate memorandum filed at that docket number.

The relevant procedural and factual history are as follows. S.Y.F. has been in the custody of Lancaster County Children and Youth Social Service Agency ("CYS" or the "Agency") since October 19, 2016. N.T., 5/16/19, at 8; N.T., 4/18/19, at 48; Petitioner's Exhibit 2, 5/16/19, at 2 (unpaginated). The circumstances were recounted as follows:

> On September 8, 2016, the [CYS] received its most recent referral of the . . . family. It was reported to the Agency that [Mother] and her paramour . . . could be heard fighting loudly throughout the night and the parents were using illegal drugs while in a parenting role. It was also reported that [S.Y.F.] was often seen dirty and uncared for.
>
> . . . .
>
> The child, [S.Y.F.], continued to reside with [Mother] and [her paramour]. There were continued reports received that there [were] domestic disputes in the home between [Mother] and [her paramour] as well as continued drug use. The Agency sent a legal letter notifying the family that if they were not cooperative with allowing the Agency to complete a home visit, . . . the Agency would be reporting [S.Y.F.] as a missing person and the Agency would be consulting the Agency attorney. A home visit was completed on October 17, 2016, with assistance from Lancaster City Police. The family was not present. There were continued concerns regarding the whereabouts of [S.Y.F.], as well as concerns for violence and drug use in the home.
>
> [S.Y.F.] was placed into Agency custody on October 19, 2016, when she was located. [The juvenile court adjudicated S.Y.F. dependent in December 2016.] [Mother] was provided with a Child Permanency Plan with the goal of reunification. [Mother] last visited with [S.Y.F.] on February 15, 2017. On January 10, 2018, the [c]ourt ordered that [a]ggravated [c]ircumstances existed as to [M]other because there [then] had been a six-month period of time with no contact with [S.Y.F.] It was also ordered that there should be no further efforts to reunify [S.Y.F.] with the mother[, who had not contacted S.Y.F. for almost one year by the date the court found aggravated circumstances.]

Petitioner's Exhibit 2, 5/16/19, at 1-3 (unpaginated); *see also* N.T., 5/16/19, at 8. Since July 2018, S.Y.F. has resided with her younger half-sibling, born during these proceedings on June 2018, in a pre-adoptive foster home.

CYS filed a petition to terminate Mother's parental rights on September 26, 2018, pursuant to 23 Pa.C.S. § 2511(a)(1), (2), (5), (8), and (b). The orphans' court held hearings on the Agency's petition on October 25, 2018,[3] April 18, 2019, and May 16, 2019. CYS presented the testimony of Presumptive Father,[4] Amanda Kauffman, the CYS caseworker assigned to the family, Ashley Caban, the Supervisor of CYS's Permanency Unit, and Colby Tuell, Lancaster Adult Probation and Parole Services probation officer. Although Mother was represented by counsel, she only appeared during the hearing on October 25, 2018.[5]

---

[3] On October 25, 2018, the orphans' court incorporated that juvenile court records into the termination proceedings. N.T., 10/25/18, at 5-7; *see also* Order, 10/26/18. Notably, however, the juvenile court records were not included with the certified record transmitted to this Court. On October 28, 2019, we directed the Clerk of Courts of Lancaster County to certify the juvenile court record and transmit it to the Prothonotary of this Court as a supplemental certified record pursuant to Pa.R.A.P. 1926. *Per Curiam* Order, 10/28/19.

[4] As Presumptive Father was incarcerated at SCI-Camp Hill, he participated via telephone.

[5] S.Y.F.'s legal interest and her best interests were represented during these proceedings by one of two guardians *ad litem*: Jeffrey Gonick, Esquire, represented the child on October 25, 2018; and Gina M. Carnes, Esquire, represented her on April 18, 2019 and May 16, 2019, respectively. Notably, Attorney Carnes testified that she spoke with then-seven-year-old S.Y.F. and did not discern a conflict between the child's best interests and her legal

By decree dated May 16, 2019, and entered May 21, 2019, the orphans' court involuntarily terminated the parental rights of Mother pursuant to 23 Pa.C.S. § 2511(a) and (b).[6]  Thereafter, on June 12, 2019, Mother, through counsel, filed a timely notice of appeal, along with a concise statement of errors complained of on appeal pursuant to Pa.R.A.P. 1925(a)(2)(i) and (b).

Mother raises the following issue for our review:

I. Whether the [c]ourt erred in terminating Mother's parental rights?

II. Whether the [c]ourt erred in concluding that the [CYS] met its burden in proving that Mother's parental rights should be terminated when there was evidence that she had been actively working on and completing the goals on her child permanency plan?

Mother's brief at 8  DHS filed a brief in support of the termination of Mother's parental rights.  The guardian *ad litem* neglected to file a brief in this appeal.

---

interest, *i.e.*, the child's preference to remain with her half-sibling in the pre-adoptive foster home.  N.T., 5/16/19, at 21-22.  Hence, this case complies with our Supreme Court's mandate announced in *In re Adoption of L.B.M.*, 161 A.3d 172, 174-75, 180 (Pa. 2017) and *In re T.S.*, 192 A.3d 1080, 1089-90, 1092-93 (Pa. 2018), that children in contested termination of parental rights proceedings must be appointed counsel to represent their legal interest. *See also In re: Adoption of K.M.G.*, ___ A.3d ___, 2019 WL 4392506 (Pa.Super. September 13, 2019) (*en banc*) (holding, while this Court has authority only to raise *sua sponte* the issue of whether trial court appointed legal counsel, it lacks authority to delve into quality of counsel's representation *sua sponte*).

[6] The decree does not specify the subsections under which the orphans' court terminated Mother's parental rights.  However, the language utilized in the decree, as supported by the conclusions set forth in the orphans' court's opinion, parallel 23 Pa.C.S. § 2511(a)(1), (2), (5), (8), and (b).  Trial Court Opinion, 7/31/19, at 36-38; Decree, 5/21/19.

In matters involving involuntary termination of parental rights, our standard of review is as follows:

> The standard of review in termination of parental rights cases requires appellate courts "to accept the findings of fact and credibility determinations of the trial court if they are supported by the record." **In re Adoption of S.P.**, 47 A.3d 817, 826 (Pa. 2012). "If the factual findings are supported, appellate courts review to determine if the trial court made an error of law or abused its discretion." **Id**. "[A] decision may be reversed for an abuse of discretion only upon demonstration of manifest unreasonableness, partiality, prejudice, bias, or ill-will." **Id**. The trial court's decision, however, should not be reversed merely because the record would support a different result. **Id**. at 827. We have previously emphasized our deference to trial courts that often have first-hand observations of the parties spanning multiple hearings. **See In re R.J.T.**, [9 A.3d 1179, 1190 (Pa. 2010)].

**In re T.S.M.**, 71 A.3d 251, 267 (Pa. 2013). "The trial court is free to believe all, part, or none of the evidence presented and is likewise free to make all credibility determinations and resolve conflicts in the evidence." **In re M.G. & J.G.**, 855 A.2d 68, 73-74 (Pa.Super. 2004) (citation omitted). "[I]f competent evidence supports the trial court's findings, we will affirm even if the record could also support the opposite result." **In re Adoption of T.B.B.**, 835 A.2d 387, 394 (Pa.Super. 2003) (citation omitted).

The termination of parental rights is governed by § 2511 of the Adoption Act, 23 Pa.C.S. §§ 2101-2938, and requires a bifurcated analysis of the grounds for termination followed by the needs and welfare of the child.

> Our case law has made clear that under [§] 2511, the court must engage in a bifurcated process prior to terminating parental rights. Initially, the focus is on the conduct of the parent. The party seeking termination must prove by clear and convincing evidence

that the parent's conduct satisfies the statutory grounds for termination delineated in [§] 2511(a). Only if the court determines that the parent's conduct warrants termination of his or her parental rights does the court engage in the second part of the analysis pursuant to [§] 2511(b): determination of the needs and welfare of the child under the standard of best interests of the child. One major aspect of the needs and welfare analysis concerns the nature and status of the emotional bond between parent and child, with close attention paid to the effect on the child of permanently severing any such bond.

*In re L.M.*, 923 A.2d 505, 511 (Pa.Super. 2007) (citations omitted). We have defined clear and convincing evidence as that which is so "clear, direct, weighty and convincing as to enable the trier of fact to come to a clear conviction, without hesitance, of the truth of the precise facts in issue." *In re C.S.*, 761 A.2d 1197, 1201 (Pa.Super. 2000) (*en banc*) (quoting *Matter of Adoption of Charles E.D.M., II*, 708 A.2d 88, 91 (Pa. 1998)).

In the case *sub judice*, the orphans' court terminated Mother's parental rights pursuant to 23 Pa.C.S. § 2511(a)(1), (2), (5), (8), and (b). In order to affirm a termination of parental rights, we need only agree with the trial court as to any one subsection of § 2511(a), as well as § 2511(b). *See In re B.L.W.*, 843 A.2d 380, 384 (Pa.Super. 2004) (*en banc*). Instantly, we affirm the orphans' court's decision to terminate Mather's parental rights pursuant to § 2511(a)(2) and (b), which provide as follows:

> **(a) General rule.--**The rights of a parent in regard to a child may be terminated after a petition filed on any of the following grounds:
>
> . . . .
>
> (2) The repeated and continued incapacity, abuse, neglect or refusal of the parent has caused the child

to be without essential parental care, control or subsistence necessary for his physical or mental well-being and the conditions and causes of the incapacity, abuse, neglect or refusal cannot or will not be remedied by the parent.

. . . .

**(b) Other considerations.--**The court in terminating the rights of a parent shall give primary consideration to the developmental, physical and emotional needs and welfare of the child. The rights of a parent shall not be terminated solely on the basis of environmental factors such as inadequate housing, furnishings, income, clothing and medical care if found to be beyond the control of the parent. With respect to any petition filed pursuant to subsection (a)(1), (6) or (8), the court shall not consider any efforts by the parent to remedy the conditions described therein which are first initiated subsequent to the giving of notice of the filing of the petition.

23 Pa.C.S. § 2511(a)(2), and (b).

With regard to termination of parental rights pursuant to § 2511(a)(2), we have indicated:

In order to terminate parental rights pursuant to 23 Pa.C.S.[] § 2511(a)(2), the following three elements must be met: (1) repeated and continued incapacity, abuse, neglect or refusal; (2) such incapacity, abuse, neglect or refusal has caused the child to be without essential parental care, control or subsistence necessary for his physical or mental well-being; and (3) the causes of the incapacity, abuse, neglect or refusal cannot or will not be remedied.

*In re Adoption of M.E.P.*, 825 A.2d 1266, 1272 (Pa.Super. 2003) (citation omitted). "The grounds for termination due to parental incapacity that cannot be remedied are not limited to affirmative misconduct. To the contrary, those grounds may include acts of refusal as well as incapacity to perform parental duties." *In re Adoption of C.D.R.*, 111 A.3d 1212, 1216 (Pa.Super. 2015)

- 7 -

(quoting *In re A.L.D.*, 797 A.2d 326, 337 (Pa.Super. 2002)). "Parents are required to make diligent efforts towards the reasonably prompt assumption of full parental responsibilities. . . . [A] parent's vow to cooperate, after a long period of uncooperativeness regarding the necessity or availability of services, may properly be rejected as untimely or disingenuous." *In re A.L.D.*, *supra* at 340 (internal quotation marks and citations omitted).

In *In re Adoption of S.P.*, 47 A.3d 817 (Pa. 2012), our Supreme Court, in addressing § 2511(a)(2), concluded that

> incarceration is a factor, and indeed can be a determinative factor, in a court's conclusion that grounds for termination exist under § 2511(a)(2) where the repeated and continued incapacity of a parent due to incarceration has caused the child to be without essential parental care, control or subsistence and that the causes of the incapacity cannot or will not be remedied.

*Id.* at 828; *see also In re D.C.D.*, 105 A.3d 662, 675 (Pa. 2014) (holding that incarceration prior to the child's birth and until the child was at least age seven renders family reunification an unrealistic goal and the court was within its discretion to terminate parental rights "notwithstanding the agency's failure" to follow court's initial directive that reunification efforts be made).

Mother, essentially argues that the termination of parental rights was not warranted because she was making progress toward completion of her goals despite her incarceration. Mother's brief at 12-17. In particular, as to drug and alcohol and mental health treatment, Mother indicates that she was enrolled in a treatment program in April 2019. *Id.* at 15. Mother further asserts that it was error for S.Y.F. not to be present at the hearing and

questioned by the court. *Id.* at 17. For the reasons we explain, *infra*, no relief is due.

In finding statutory grounds for terminating Mother's rights, the orphans' court reasoned:

> Instantly, the Agency proved bases for the termination of Mother's parental rights on four separate statutory grounds, specifically, under 23 [Pa.C.S. § 2511(a)(1), (2), (5), and (8).]. .
>
> The Agency filed the Petition to Terminate Parental Rights on September 26, 2018. Mother's last visit with S.Y.F. was on February 15, 2017. For a period of nineteen months, Mother demonstrated a settled purpose of relinquishing her parental claim to S.Y.F. and she failed to perform any parental duties for S.Y.F. Mother had no contact with the Agency from February 2017 until Mother gave birth to another child in June of 2018.
>
> Over the course of the case, Mother demonstrated an incapacity and refusal to provide parental care necessary for S.Y.F.'s physical and mental well-being. S.Y.F. was placed with the Agency on October 19, 2016. Mother's visits with S.Y.F. ceased on February 15, 2017. Mother had never made any effort to work on her objectives which were contained in the original child's permanency plan which had a primary permanency goal of reunification with Mother. Subsequently, aggravated circumstances were established due to Mother's lack of contact with S.Y.F. Mother's refusal to address any of the child's permanency plan objectives and refusal to maintain contact with S.Y.F. establish that Mother is incapable of parenting. The result is that S.Y.F has been without essential parental care and Mother has demonstrated a refusal to remedy her incapacity to parent. A refusal to perform parental duties is as critical as affirmative misconduct. [*See In re Adoption of C.D.R.*], 111 A.3d 1212, 1216 (Pa.Super. 2015)[.]
>
> S.Y.F. has been removed from Mother's care by the court for a period exceeding 6 months. The conditions which caused S.Y.F. to be placed with the Agency continue to exist and Mother effectively refused the assistance which the Agency originally offered her. The conditions which led to the removal of S.Y.F.

from Mother's care continue to exist because Mother did hardly anything to remedy them. The record more than amply demonstrates that Mother showed little interest in [S.Y.F.] over a period of years.

Trial Court Opinion, 7/31/19, at 40-41.

A review of the record supports the orphans' court's finding of grounds for termination under § 2511(a)(2). The certified record reveals that Mother failed to maintain contact with S.Y.F. and CYS and to complete her goals aimed at reunification with S.Y.F. In addition, Mother was incarcerated on several occasions which prohibited her from performing her parental duties.

Significantly, S.Y.F. came into custody on October 19, 2016. N.T., 5/16/19, at 8. Mother's last visit with S.Y.F. was on February 15, 2017, and the court found aggravated circumstances on January 10, 2018, due to a lack of contact with S.Y.F. *Id.* at 8, 10. Specifically, Agency caseworker, Amanda Kauffman, testified that, at the time aggravated circumstances were found, Mother had not had contact with S.Y.F. for almost a year. *Id.* In addition, visitation was suspended. *Id.* at 9. Further, since becoming caseworker in August 2017, Ms. Kauffman's only contact with Mother was when she went to the hospital after Mother gave birth to S.Y.F.'s younger half-sister. *Id.* at 8-9.

Moreover, Ms. Kauffman indicated that she had no documentation that Mother was working toward her reunification goals. *Id.* at 10. Rather, Ms. Kauffman confirmed that, to her knowledge, all of Mother's reunification goals were incomplete as of April 1, 2019. *Id.* As stated by Ms. Kauffman, "She did not work on her plan to be reunified with [the child]. She's been in and

out of . . . prison twice since that time, I believe. And we've -- I've had no contact with her by the time that I was finished with the case." N.T., 5/16/19, at 9.

Mother's probation officer, Colby Tuell, testified that, since his last contact with Mother on June 26, 2018, two bench warrants have been issued for her arrest for "failure to report to appointments." *Id.* at 5. Additionally, aside from past charges of burglary, robbery, and criminal conspiracy, Mother was charged with retail theft on April 2, 2019. Petitioner's Exhibit, 5/16/19, at 5.

Hence, the record substantiates the conclusion that Mother's repeated and continued incapacity, abuse, neglect, or refusal has caused S.Y.F. to be without essential parental control or subsistence necessary for her physical and mental well-being. *See In re Adoption of M.E.P.*, *supra* at 1272. Moreover, Mother cannot or will not remedy this situation. *See id.* Mother's repeated incarceration is a barrier to performing parental duties and, when Mother is at liberty from confinement she does not make diligent efforts towards the reasonably prompt assumption of her responsibilities. Hence, we do not disturb the trial court's determination that CYS established by clear and convincing evidence the statutory grounds to terminate Mother's parental rights pursuant to § 2511(a)(2).

As to subsection (b), our Supreme Court outlined the inquiry as follows:

[I]f the grounds for termination under subsection (a) are met, a court "shall give primary consideration to the developmental,

physical and emotional needs and welfare of the child." 23 Pa.C.S. § 2511(b). The emotional needs and welfare of the child have been properly interpreted to include "[i]ntangibles such as love, comfort, security, and stability." *In re K.M.*, 53 A.3d 781, 791 (Pa.Super. 2012). In *In re E.M.*, [620 A.2d 481, 485 (Pa. 1993)], this Court held that the determination of the child's "needs and welfare" requires consideration of the emotional bonds between the parent and child. The "utmost attention" should be paid to discerning the effect on the child of permanently severing the parental bond. *In re K.M.*, 53 A.3d at 791. However, as discussed below, evaluation of a child's bonds is not always an easy task.

*In re T.S.M.*, *supra* at 267. "In cases where there is no evidence of any bond between the parent and child, it is reasonable to infer that no bond exists. The extent of any bond analysis, therefore, necessarily depends on the circumstances of the particular case." *In re K.Z.S.*, 946 A.2d 753, 762-63 (Pa.Super. 2008) (citation omitted).

When evaluating a parental bond, "[T]he court is not required to use expert testimony. Social workers and caseworkers can offer evaluations as well. Additionally, § 2511(b) does not require a formal bonding evaluation." *In re Z.P.*, *supra* at 1121 (internal citations omitted).

Moreover,

While a parent's emotional bond with his or her child is a major aspect of the [§] 2511(b) best-interest analysis, it is nonetheless only one of many factors to be considered by the court when determining what is in the best interest of the child.

[I]n addition to a bond examination, the trial court can equally emphasize the safety needs of the child, and should also consider the intangibles, such as the love, comfort, security, and stability the child might have with the foster parent. . . .

*In re Adoption of C.D.R.*, *supra* at 1219 (quoting *In re N.A.M.*, 33 A.3d 95, 103 (Pa.Super. 2011)) (quotation marks and citations omitted).

Instantly, the orphans' court reasoned,

Termination of Mother's parental rights will serve the needs and welfare of S.Y.F. by giving [S.Y.F.] the permanency and stability she needs and desires.

S.Y.F. has been removed from the care of Mother for a period exceeding twelve months. Again, the conditions which caused S.Y.F. to be removed from Mother continue to exist. Mother is incapable of caring for S.Y.F. at this time. The needs and welfare of S.Y.F. will be best served by granting termination of Mother's parental rights.

. . . .

The court must next determine whether terminating Mother's and Father's parental rights to S.Y.F. will best serve the developmental, physical and emotional needs and welfare of S.Y.F. 23 [Pa.C.S. § 2511(b)]. "Intangibles such as love, comfort, security, and stability are involved in the inquiry into the needs and welfare of the child." [*In re C.M.S.*], 884 A.2d 1284, 1287 (Pa.Super. 2005)[.] S.Y.F. has not seen Mother since February 15, 2017. Two years and four months have passed. Expert testimony is not necessary to establish the existence or the nonexistence of a bond between parent and child. The court is confident in finding that no bond exists between Mother and S.Y.F., and [S.Y.F.] unambiguously stated her own wishes regarding her future - that she be adopted by her resource family. S.Y.F. is entitled to the stability and permanency that the termination of Mother's parental rights will afford her.

Trial Court Opinion, 7/31/19, at 41-42.

Again, the record supports the trial court's finding that S.Y.F.'s developmental, physical and emotional needs and welfare favor termination of Mother's parental rights pursuant to § 2511(b). *See T.S.M.*, *supra* at 267.

- 13 -

Critically, S.Y.F. has been placed in her current foster home with her younger half-sister, with whom she is very bonded, since July 2018. N.T., 5/16/19, at 14, 18; N.T., 4/18/19, at 16-17. The CYS caseworker, Amanda Kauffman, testified that S.Y.F. is doing well and is comfortable in the home, which is a pre-adoptive resource. *Id.* at 16; 17. Ms. Kauffman reported that S.Y.F. calls the foster parent "mom." N.T., 5/16/19, at 15. Further, S.Y.F. has some trauma-related memory loss issues for which she has undergone evaluation and been recommended to undergo further evaluation and therapy. N.T., 5/16/19, at 14-15; N.T., 4/18/19, at 16, 42-43. Ms. Kauffman testified that S.Y.F.'s foster parent is able to meet these needs. N.T., 5/16/19, at 15. As such, Ms. Kauffman opined that it is in S.Y.F.'s best interest to remain in the current foster home. *Id.* at 16.

While Mother may profess to love S.Y.F., a parent's own feelings of love and affection for a child, alone, will not preclude termination of parental rights. *In re Z.P.*, *supra* at 1121. At the time the termination hearings concluded, S.Y.F. had been in placement for approximately two and half years, and is entitled to permanency and stability. As we stated, a child's life "simply cannot be put on hold in the hope that [a parent] will summon the ability to handle the responsibilities of parenting." *Id.* at 1125. Rather, "a parent's basic constitutional right to the custody and rearing of his child is converted, upon the failure to fulfill his or her parental duties, to the child's right to have proper parenting and fulfillment of his or her potential in a permanent,

healthy, safe environment." ***In re B., N.M.***, 856 A.2d 847, 856 (Pa.Super. 2004) (citation omitted).

Accordingly, based upon our review of the certified record, we find no abuse of discretion and conclude that the orphans' court did not err in terminating Mother's parental rights pursuant to 23 Pa.C.S. § 2511(a)(2) and (b).

Decree affirmed.


Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 11/27/2019